UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LUDMILA N. A.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 22-cv-06089-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 15 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration ("SSA") declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 4, 9) and both parties have moved for summary judgment (dkts. 23, 15). For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied.

## LEGAL STANDARDS

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact,

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #12. *See* (Dkts. 12-1 through 12-9).

if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF THE RELEVANT EVIDENCE**

For much of her life, Plaintiff has suffered from varying levels of anxiety and depression. *See* AR at 692, 717, 794. In July of 2016, Plaintiff's condition deteriorated. *Id.* at 369, 415, 468-71. At the time, Plaintiff was being harassed and bullied at work. *Id.* at 381-85. She began to have daily panic attacks, nightmares, headaches, stomach aches, and body pains. *Id.* at 55-57, 817, 884. In March of 2019, Plaintiff's symptoms became untenable, and she left her job. *Id.* at 368.

Unfortunately, removing herself from her work environment did not remedy Plaintiff's symptoms. *See e.g.*, *id.* at 842, 843, 847, 872, 900, 903, 937. Rather, Plaintiff's condition worsened, and, in December of 2019, Plaintiff attended an intensive out-patient program at the recommendation of her treating physicians. *Id.* at 817-917. During the program, Plaintiff participated in both individual and group therapy, though she struggled to find value in her treatment. *Id.* at 842, 876, 904, 917. Plaintiff's symptoms persisted throughout the program. *See generally id.* at 817-920. Her treatment providers noted various symptoms including fatigue, anhedonia, frequent crying, insomnia, hopelessness, and emotional dysregulation. *Id.* at 841, 837,

1   843. They further noted that Plaintiff has experienced significant trauma, including physical abuse
2   and sexual assault, but was unwilling or unable to discuss this trauma in therapy, preferring to
3   focus on her unemployment and the circumstances that led to the loss of her job. *See id.* at 817,
4   842, 844, 884. During her time in the treatment program, Plaintiff reported weight gain as well as
5   "stress eating." *Id.* at 817. On discharge, Plaintiff was diagnosed with generalized anxiety and
6   major depressive disorder. *Id.* at 917. At her final appointment, it was noted that her medications
7   "ha[d] not been effective." *Id.* at 919.

8           Plaintiff's primary care providers, Dr. Buche and Dr. Bruce, have treated Plaintiff since
9   2011 and 2019, respectively. *See id.* at 928, 1082. Their records are largely consistent with one
10  another, and indicate that Plaintiff routinely experiences panic attacks, nightmares, difficulty
11  sleeping, social isolation, difficulty with memory and concentration, frequent crying and a
12  difficulty confronting her illness. *See id.* at 928-29, 1051, 1054-59, 1062-63, 1082, 1110, 1112,
13  1116, 1121. Consistent with Dr. Buche and Dr. Bruce's treatment notes, which demonstrate that
14  Plaintiff frequently cried throughout therapy sessions, and often struggled with short term
15  memory, concentration, and frustration, Plaintiff had to take two breaks during her hearing before
16  the ALJ in 2021, was tearful throughout, and struggled to remember the questions asked of her.
17  *See id.* at 58-60. Similarly, in October 2020, Plaintiff underwent a psychological consultative
18  examination by Dr. Stafford, during which she "required redirecting," cried throughout the
19  examination, reported lack of sleep, and had noted memory deficits. *Id.* at 28, 1071-75. Indeed,
20  Plaintiff's FSIQ score was deemed unreliable because of Plaintiff's "low frustration tolerance and
21  emotional dysregulation." *Id.* at 1073. A third-party function report, submitted by Plaintiff's close
22  friend, also notes frequent crying, difficulty with memory and concentration, social isolation, and
23  a loss of interest in hobbies. *See id.* at 260-70. Both Dr. Buche and Dr. Bruce opined that Plaintiff
24  has experienced limited, if any, benefit from treatment noting that her "prognosis is poor." *See id.*
25  at 929, 939, 1076-79, 1106.

26          In addition to Plaintiff's anxiety and depression, Plaintiff has been diagnosed with sleep
27  apnea, insomnia, hyperlipidemia, and obesity. *See id.* at 501-05 (sleep apnea diagnosis), 393
28  (insomnia diagnosis), 952 (hyperlipidemia diagnosis), *and* 954 (obesity diagnosis). Plaintiff's

body mass index ("BMI") is consistently between 38 and 42, which indicates morbid obesity. *Id.* at 820, 840, 954, 960, 964, 969, 974, 989, 1090. Plaintiff uses a CPAP machine to assist her during sleep, though she still reports frequent sleep disturbance, often due to nightmares. *See id.* at 55-57, 501-05, 978 (noting "perfect" compliance with CPAP machine). Plaintiff's record is replete with reports of insomnia, fatigue, exhaustion, and tiredness. *See e.g.*, *id.* at 386 (early insomnia, low energy, and fatigue), 458, 466 ("extreme fatigue, sleeplessness"), 476 ("difficulty sleeping, waking in tears, nightmares, and flashbacks"), 477 ("extremely fatigued, sleepless, exhausted"), 469 ("difficulty sleeping due to excessive worry"), 819, 843 ("poor sleep, frequent nightmares"), 872, 898, 878 ("client appeared very tired"), 903 (client "presented as tired"). At the hearing, Plaintiff testified that she "had no energy," was tired and sad "all the time," and that "the only way [she] could cope with [her] condition" was by eating. *Id.* at 65. The ALJ did not ask Plaintiff about her obesity, sleep apnea, hyperlipidemia, or insomnia at the hearing. *See generally id.* at 37-70.

## THE ALJ'S DECISION

The ALJ in this case engaged in the required five step sequential evaluation process. *See id.* at 22-30. At step one, the ALJ determined Plaintiff had not performed substantial gainful activity during the relevant period, finding it unnecessary to address Plaintiff's recent work activity, because "even assuming that it was not substantial gainful activity, there exists a valid basis for denying the claimant's application." *Id.* at 23-24. At step two, the ALJ determined Plaintiff's only severe impairments were major depresssive disorder and anxiety. *Id.* at 24. Relying on a record from 2019, which noted Plaintiff's obesity and suggested that Plaintiff did not comply with her CPAP machine, the ALJ found that Plaintiff's obesity and obstructive sleep apnea were non-severe impairments asserting, broadly, that the record did not "indicate any ongoing, severely limiting pathology." *Id.* The ALJ did not address Plaintiff's diagnoses of insomnia and hyperlipidemia at step two. *See id.* At step three, the ALJ found that none of Plaintiff's conditions met or equaled any listed impairment. *Id.* at 25. In formulating Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform light work, with several non-exertional limitations. *Id.* at 26. In reaching this determination, the ALJ dismissed Plaintiff's symptom testimony because it was "inconsistent with the medical evidence

4

and other evidence in the record" and was not corroborated by the medical evidence in the record. *Id.* at 27. The ALJ also dismissed the third-party function report because its author was "not medically trained" and "cannot be considered a disinterested third party." *Id.* at 28. At step four, the ALJ found that Plaintiff was incapable of completing her past relevant work as a business instructor, financial analyst, systems analyst, and quality assurance analyst. *Id.* at 29. At step five, the ALJ concluded that, based on Plaintiff's RFC, she was capable of work in the representative occupations of order picker, car detailer, and cleaner. *Id.* at 30.

## DISCUSSION

In the instant case, the ALJ erred at step two by failing to develop the record as to Plaintiff's insomnia, hyperlipidemia, obesity, and sleep apnea.[3] Because the ALJ did not properly develop the record, the ALJ's determination that Plaintiff's obesity and sleep apnea were non-severe is not supported by substantial evidence. The ALJ's failure to address Plaintiff's insomnia and hyperlipidemia exacerbates this error as these impairments, particularly in conjunction with obesity and sleep apnea, are likely to affect Plaintiff's physical and mental functioning. As such, remand for further development of the record is necessary.

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings . . . [which] are inquisitorial rather than adversarial[,] [thus] [i]t is the ALJ's

---

[3] Although no party has raised a step two error or asserted that the ALJ failed to properly develop the record, the court can, and should, raise and address those issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence—and to take any consequentially necessary action. *See Sims v. Apfel*, 530 U.S. 103, 110 (2000) (explaining that an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation because the underlying claims process before the ALJ is not adversarial). While claimants must carry the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to their own devices; as such, lapses and omissions in pleading or procedure cannot be relied upon to withhold or delay benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1985). Thus, the failure by Plaintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 83,840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009). Other courts faced with this issue have arrived at a similar conclusion. *See e.g.*, *Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017)(collecting cases); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018); *Peterson v. Comm'r of Soc. Sec.*, No. 16-2912, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014); *Mangan v. Colvin*, No. 12 C 7203, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005).

duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). It is well established that "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). When the record consists of insufficient or ambiguous evidence, it is incumbent upon the ALJ to take reasonable steps to ensure that questions raised by the medical evidence are carefully addressed so that a determination of disability may be made on a sufficient evidentiary record. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).

At the outset, the court notes that the ALJ's failure to mention Plaintiff's insomnia and hyperlipidemia at step two constitutes legal error. As discussed above, evidence of these diagnoses is persistent throughout Plaintiff's record. The severity evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimis* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is non-severe at step two only if the evidence establishes a slight abnormality that has a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. Given the prevalence of insomnia and hyperlipidemia in Plaintiff's record, the ALJ should have addressed these impairments at step two and beyond.

As to Plaintiff's obesity and sleep apnea, the ALJ dismissed these two impairments as non-severe by relying chiefly on a record from 2019 which indicated Plaintiff's "CPAP machine was titrated properly, but [Plaintiff] did not adhere to proper usage." AR at 24. First, proper titration of Plaintiff's CPAP machine bears no relevance to the severity of Plaintiff's obesity. Additionally, there is evidence in the record that Plaintiff *did* adhere to proper usage of her CPAP machine, indeed, that her compliance was "perfect." *See id.* at 978. Thus, the 2019 record, by itself, does not amount to substantial evidence sufficient to dismiss Plaintiff's obesity and sleep apnea as non-severe at step two.

Moreover, to the extent the ALJ dismissed Plaintiff's obesity and sleep apnea for lack of

1  evidence indicating "ongoing, severely limiting pathology," the ALJ failed to fully and fairly
2  develop the record. The SSA has emphasized the importance of addressing obesity in developing a
3  claimant's RFC. *See* Social Security Ruling ("SSR") 19-2P, (S.S.A. May 20, 2019), 2019 WL
4  2374244. The SSR, which requires ALJ's to consider claimant's obesity in formulating the RFC,
5  specifically notes that obesity complicates other diagnoses, pointing out that, in addition to
6  exertional limitations, claimants with obesity may experience limitations in their "physical and
7  mental ability to sustain work activity" and that "[t]his may be particularly true in cases involving
8  obesity and sleep apnea." *Id.* If the record failed to sufficiently address Plaintiff's obesity, it was
9  the ALJ's duty "to conduct an appropriate inquiry," by, for example, ordering a consultative
10 examination, "subpoenaing [Plaintiff']s physician, or submitting further questions to [Plaintiff's
11 physicians]," or questioning Plaintiff herself. *See Smolen*, 80 F.3d at 1288.

12        The ALJ's failure to develop the record at step two is not harmless, as proper consideration
13 of Plaintiff's impairments may impact the ALJ's RFC analysis and her ultimate disability
14 determination. Accordingly, the court **REMANDS** for further proceedings to develop the record
15 as to the effect of Plaintiff's obesity, sleep apnea, hyperlipidemia, and insomnia on her ability to
16 function in the workplace.

17        Having found reversible error at step two, the court need not address the remainder of
18 Plaintiff's claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). However, the court
19 notes that the ALJ failed to provide "specific, clear and convincing reasons" to dismiss Plaintiff's
20 testimony, as is required by Ninth Circuit precedent. *See Lambert v. Saul*, 980 F.3d 1266, 1277
21 (9th Cir. 2020) (holding that a generic statement that the claimant's testimony is "not entirely
22 consistent with the objective medical and other evidence" does not meet the "specific, clear and
23 convincing" standard); *Treichler v. Comm'r Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014)
24 ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective
25 medical evidence, without any specific findings in support of that conclusion is insufficient for our
26 review") (internal citations and quotation marks omitted). Here, the ALJ provided only generic
27 recitations that Plaintiff's testimony was inconsistent with and uncorroborated by the record; this
28 does not meet the "specific, clear and convincing" standard. The ALJ also dismissed the third-

1  party function report of Plaintiff's friend on erroneous grounds. An ALJ may not use the close
2  relationship between lay witnesses and the claimant to dismiss observations that are otherwise
3  consistent with the record, nor may an ALJ dismiss lay witnesses because they are not medical
4  experts. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)
5  ("[R]egardless of whether they are interested parties, 'friends and family members in a position to
6  observe a claimant's symptoms and daily activities are competent to testify as to [his or] her
7  condition.'") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993); *cf. Bruce v. Astrue*,
8  557 F.3d 1113, 1116 (9th Cir. 2009) (holding that "the ALJ should not have discredited [lay]
9  testimony on the basis of its relevance or irrelevance to medical conclusions."). The SSA's
10 regulations have long recognized the value of testimony by lay witnesses who, by definition, lack
11 medical expertise and who are often close friends, family, and caretakers. *See Sprague v. Bowen*,
12 812 F.2d 1226, 1232 (9th Cir. 1987) (holding that disregard of lay testimony "violates the
13 Secretary's regulation that he will consider observations by non-medical sources as to how an
14 impairment affects a claimant's ability to work.") (citing 20 C.F.R. § 404.1513(e)(2) (current
15 version at 20 C.F.R. § 404.1513(a)(4)). On remand, the court directs the ALJ to reassess the
16 testimony of Plaintiff and any lay witnesses in accordance with these standards.

17 As to Plaintiff's other claims (*see* Pl.'s Mot. (dkt. 13) at 10-20), the Commissioner is
18 **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing opinion
19 as necessary. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal.
20 Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *21 (D. Or.
21 Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 WL 1056787, at *5 (N.D. Cal
22 Mar. 19, 2021).
23 //
24 //
25 //
26 //
27 //
28 //

**CONCLUSION**

For the reasons stated above, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion is **DENIED**. This case is remanded for further proceedings consistent with this order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: March 12, 2024

ROBERT M. ILLMAN
United States Magistrate Judge